ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL ESPECIAL**

| | | |
|---|---|---|
| **LORRAINE LAGO LASSISE**<br>QUERELLANTE(S)-RECURRENTE(S)<br><br>V.<br><br>**AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO RICO**<br>QUERELLADA(S)-RECURRIDA(S) | **KLRA202300198** | *REVISIÓN DE DECISIÓN ADMINISTRATIVA*<br>procedente del<br>**NEGOCIADO DE ENERGÍA DE PUERTO RICO**<br><br>Caso núm.<br>**NEPR-QR-2019-0062**<br><br>Sobre:<br>Querella sobre Revisión Formal de Factura |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

*Barresi Ramos*, juez ponente

**S E N T E N C I A**

En San Juan, Puerto Rico, hoy día 17 de diciembre de 2024.

Comparece ante nos la señora **LORRAINE LAGO LASSISE** (señora **LAGO LASSISE**) mediante *Revisión de Decisión Administrativa* interpuesta el 2 de mayo de 2023. En su recurso, nos solicita que revisemos la *Resolución Final y Orden* dictaminada el 30 de enero de 2023, por el **NEGOCIADO DE ENERGÍA DE PUERTO RICO (NEGOCIADO).**[1] Mediante la aludida decisión, el **NEGOCIADO** declaró no ha lugar la Q*uerella* presentada el 11 de abril de 2019 por la señora **LAGO LASSISE**; así como ordenó el cierre y archivo, sin perjuicio, de la misma.

Exponemos el trasfondo fáctico y procesal que acompaña a la presente controversia.

**- I -**

El día 13 de septiembre de 2018, la señora **LAGO LASSISE** incoó una *Objeción de Factura* ante la **AUTORIDAD DE ENERGÍA ELÉCTRICA DE PUERTO**

---

[1] Esta determinación administrativa fue notificada y archivada en autos el 30 de enero de 2023. Apéndice de la *Revisión de Decisión Administrativa,* págs. 41- 53.

RICO (AEE).[2] Arguyó lo siguiente:

> "[l]a cuenta 7349042100 es una cuenta residencial y nunca se ha pagado tarde. No hay forma de que el consumo ascienda a $37,000 ni que haya atrasos por esa cantidad. Pido que no me penalicen hasta que no se aclare este asunto. Yo nunca he pagado tarde".

En respuesta, el 4 de enero de 2019, la AEE cursó una comunicación, por correo, en la cual expuso:

> "[c]onforme a su solicitud, procedimos a investigar las transferencias realizadas en su cuenta. De la investigación realizada se desprende que la transferencia es un balance pendiente en la cuenta número 9614102000 en el predio L8 Carretera 2 esquina calle 7 Plaza Chalets de Caparra. En la misma quedó pendiente un balance de $36,821.25.

> Luego de revisar la evidencia presentada y los datos de nuestro sistema, concluimos que las transferencias fueron realizadas correctamente conforme al Reglamento de Términos y Condiciones Generales para Suministro de Energía Eléctrica y de acuerdo al contrato de suministro de energía eléctrica en su inciso 4...[...]."[3]

En desacuerdo con el resultado de la investigación de la AEE, el 11 de abril de 2019, la señora LAGO LASSISE presentó una *Querella* ante el NEGOCIADO.[4] El remedio solicitado era que la AEE realizara el ajuste en su factura por la cantidad de $37,775.43.[5] Argumentó que había objetado la factura en el mes de septiembre de 2018 y se habían incumplido las disposiciones de la Ley Núm. 57 de 27 de mayo de 2014, según enmendada, conocida como la *Ley de Transformación y ALIVIO Energético* (Ley Núm. 57-2014). El 1 de mayo de 2019, la AEE presentó una *Moción Solicitando Desestimación.*[6] Adujo que la señora LAGO LASSISE no había solicitado reconsideración de la misiva fechada 4 de enero de 2019; incumplió con las disposiciones del Artículo 6.27 de la Ley Núm. 57-2014, *supra*, referente a agotar remedios administrativos; y la Sección 3.04 (b) del Reglamento Núm. 8543 de 18 de noviembre de 2014, conocido como el *Reglamento de Procedimientos Adjudicativos, Avisos de Incumplimiento, Revisión de Tarifas*

---

[2] Apéndice de la *Revisión de Decisión Administrativa,* pág. 4.
[3] *Íd.*, págs. 5- 7.
[4] *Íd.*, págs. 14- 19.
[5] *Íd.*, pág. 15.
[6] *Íd.*, págs. 20- 29.

*e Investigaciones* (Reglamento Núm. 8543).

Después, el 25 de noviembre de 2019, la señora LAGO LASSISE presentó una *Moción en Oposición a Sol[i]citud de Desestimación*.[7] Replicó que el Reglamento Núm. 8863 del 1 de diciembre de 2016, conocido como el *Reglamento sobre el Procedimiento para la Revisión de Facturas y Suspensión del Servicio Eléctrico por Falta de Pago* (Reglamento Núm. 8863), expresa: "en caso de que la compañía (en este caso la AEE) no inicie investigación o proceso administrativo correspondiente en torno a la objeción y solicitud de investigación dentro del término establecido (30 días), se entenderá que la compañía ha declarado con lugar la objeción del cliente y se obliga a hacer los ajustes correspondientes en la factura objetada, según solicitado por el cliente".[8] Enfatizó que la AEE, al no contestar la objeción de la factura dentro del término dispuesto por el referido Reglamento, debía proceder a realizar los ajustes correspondientes y notificarle sobre ello.

El 22 de enero de 2020, el NEGOCIADO dictó *Orden* pautando audiencia para el 6 de febrero de 2020.[9] En consecuencia, se celebró la audiencia y el 14 de julio de 2020, el NEGOCIADO pronunció *Resolución Interlocutoria*.[10] Determinó declarar no ha lugar la *Moción Solicitando Desestimación* fundamentado en que "la objeción se realizó dentro del término establecido por la Autoridad. De otra parte, tampoco hay duda de que la Autoridad nunca notificó a la parte Querellante del inicio de la investigación y de que la determinación inicial sobre la objeción factura emitida por la Autoridad fue pasado el término de (60) días que establece la ley y el reglamento...[..].".

Más tarde, el 6 de noviembre de 2020, el NEGOCIADO expidió *Citación* pautando una Conferencia con Antelación al Juicio (CAJ) para el 21 de diciembre de 2020. La señora LAGO LASSISE no compareció a la CAJ, pero estuvo presente la AEE. En la CAJ, la AEE presentó doce (12) documentos que

---

[7] Apéndice de la *Revisión de Decisión Administrativa*, págs. 30- 32.
[8] *Íd.*, pág. 31.
[9] *Íd.*, págs. 33- 34.
[10] *Íd.*, págs.35- 40.

fueron marcados como identificaciones. Así las cosas, el 4 de enero de 2021, el **NEGOCIADO** decretó *Citación* pautando audiencia para el 26 de febrero de 2021.

Luego de celebrada la audiencia, el 30 de enero de 2023, el **NEGOCIADO** intimó la *Resolución Final y Orden* recurrida.[11] En síntesis, dispuso que en conformidad con el Art 6.27(3) de la Ley 57-2014 corresponde adjudicar la objeción a favor del cliente y la **AEE** se obliga a hacer los ajustes en la factura objetada según solicitado por el consumidor. Esto es, la parte querellante debe pasar prueba sobre lo solicitado en su objeción de la factura. Empero, el día de la audiencia, la representación legal de la señora **LAGO LASSISE** manifestó que no estaría presentando evidencia ni su testimonio. La **AEE** interrogó la señora **LAGO LASSISE,** así como a la señora Darlene Fuentes Amador. La señora Fuentes testificó que en la cuenta comercial a nombre de la señora **LAGO LASSISE** hubo un acuerdo de pago suscrito por esta que no se cumplió; y el acuerdo estipulaba un pago mensual por la cantidad de $816.09 para una cantidad global adeudada a la cuenta de $19,585.95. Explicó la señora Fuentes Amador que la sección XII, Artículo A del Reglamento 7982 implanta que "[...] cualquier balance dejado de pagar puede transferirse a

---

[11] Apéndice de la *Revisión de Decisión Administrativa,* págs. 41- 53. En su Anejo A, el **NEGOCIADO** formuló las siguientes determinaciones de hechos: 1. La Querellante tiene una cuenta de servicio eléctrico con la Autoridad cuyo número es 7349042000. 2. La Querellante presentó ante la Autoridad una objeción a su factura de 12 de septiembre de 2018, por la cantidad de $37,775.43, fundamentada en alto consumo. El 13 de septiembre de 2018, la Querellante objetó su factura ante la Autoridad, Objeción Número OB20180913YofR. 3. El remedio específico que solicitó la Querellante en su objeción de factura fue que no la penalizara hasta que no se aclare el asunto en su cuenta. La Autoridad nunca notificó a la Querellante sobre el inicio de la investigación a partir de la fecha en que esta presentó su objeción. El 4 de enero de 2019, transcurrido casi 4 meses desde que se presentó la objeción, la Autoridad notificó a la Querellante que de la investigación realizada se desprende que la cantidad de $36,821.25 que surge en el renglón de cargos previos en la factura de 12 de septiembre de 2018, corresponde a una transferencia por un balance pendiente en la cuenta comercial número 9614102000 en el predio L8 Carretera 2 esquina calle 7 Plaza Chalets de Caparra. En la misma quedó pendiente un balance de $36,821.25, para el cual se acordó un plan de pago, que la Querellante incumplió. La Autoridad no cumplió con el término jurisdiccional de treinta (30) días, contados a partir de la fecha de notificación de la objeción, para notificar sobre el inicio de la investigación, ni con el término de sesenta (60) días luego de iniciada la investigación para culminar la misma y notificar al cliente dentro del término jurisdiccional. 4. La Querellante no solicitó reconsideración de la determinación inicial de la Autoridad. 5. El 11 de abril de 2019, la Querellante presentó ante el Negociado de Energía la Querella de epígrafe. 6. El 14 de julio de 2020, el Negociado de Energía emitió Resolución Interlocutoria determinando que la Querellante no incurrió en incuria al presentar la Querella de epígrafe el 11 de abril de 2019 y se declaró no ha lugar la Moción Solicitando Desestimación de la Autoridad.

cualquier otra cuenta que se facture a nombre del mismo cliente o que éste utilice a nombre de otro y de no objetarse en conformidad con lo dispuesto en la Sección XIII de este Reglamento...". El **NEGOCIADO** enunció que de los documentos que obran en el expediente y testimonios, surge que el remedio específico solicitado por la señora **LAGO LASSISE** era que no la penalizaran hasta que no se aclarara el asunto en su cuenta y la **AEE** le notificó que la cuantía de $36,821.25 correspondía a la transferencia de un balance pendiente en su cuenta comercial número 96141020000. Ante ello, el **NEGOCIADO** decidió que el remedio solicitado fue concedido; por lo que, declaró no ha lugar la *Querella* y ordenó el cierre y archivo, sin perjuicio.

Disconforme, el 19 de febrero de 2023, la señora **LAGO LASSISE** presentó una *Moción de Reconsideración en Torno a la Resolución Final y Orden Emitida el 30 de Enero de 2023*.[12] Razonó que la **AEE** incumplió con los términos fatales para notificar la conclusión de la investigación; lo procedente era que la objeción sea resuelta a su favor; y corresponde ordenar el ajuste de la factura objetada. El 1 de marzo de 2023, el **NEGOCIADO** dispuso *Resolución* en la cual sostuvo su determinación contenida en la *Resolución Final y Orden*, y declaró no ha lugar la solicitud de reconsideración presentada por la señora **LAGO LASSISE**.[13]

En desacuerdo, el 2 de mayo de 2023, la señora **LAGO LASSISE** acudió ante este Tribunal mediante su *Revisión de Decisión Administrativa.* En su recurso, señala el(los) siguiente(s) error(es):

> Erró el Negociado de Energía de Puerto Rico al no declarar "Ha Lugar" automáticamente la factura objetada, como dispone el Artículo 6.27 de la Ley Núm. 57-2014, optando en vez por llevar a cabo una revisión *de novo*, y permitiendo la entrada al expediente de una investigación ultra vires.

> Erró el Negociado de Energía de Puerto Rico al declarar "No Ha Lugar" una objeción de factura presentada el 18 de septiembre de 2018[,] por la cantidad de $37,775.43, transcurrido el plazo jurisdiccional para la investigación, en abierta contravención al expediente administrativo, que contiene evidencia sustancial, determinaciones de hecho y derecho, estipulaciones y admisiones

---

[12] Apéndice de la *Revisión de Decisión Administrativa*, págs. 54-59.
[13] *Íd.*, págs. 60-61.

de parte sobre dicha objeción, por esa cantidad, y el transcurso del plazo.

El 22 de mayo de 2023, emitimos *Sentencia* en la cual desestimamos el recurso de *Revisión de Decisión Administrativa* por falta de jurisdicción. Insatisfecha, el 12 de julio de 2023, la señora LAGO LASSISE acudió ante el Tribunal Supremo mediante un *Recurso de Apelación.* Así las cosas, el 22 de abril de 2024, el Tribunal Supremo prescribió una *Sentencia* revocando la *Sentencia* emitida por el Tribunal de Apelaciones y devolviendo el recurso al foro apelativo intermedio para atenderlo en los méritos.[14]

Luego de varios trámites procesales, el 29 de julio de 2024, la **AEE** presentó su *Alegato de la Autoridad de Energía Eléctrica* y *Oposición a Solicitud de Auxilio de Jurisdicción por Notificación Defectuosa de Resolución Final del Negociado de Energía de Puerto Rico.* El 7 de octubre de 2024, la señora LAGO LASSISE presentó su *Alegato Suplementario.*

Evaluado concienzudamente el expediente del caso, contando con el beneficio de la comparecencia de ambas partes, y habiendo examinado minuciosamente la transcripción de la prueba oral estipulada, nos encontramos en posición de adjudicar. Puntualizamos las normas de derecho pertinentes a la(s) controversia(s) planteada(s).

- II –

- A - *Revisión Administrativa*

La *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU) provee un cuerpo de reglas mínimas para gobernar los procesos de adjudicación y reglamentación en la administración pública.[15] Su sección 4.1 instituye la *revisión judicial* de las determinaciones finales de las agencias por este Tribunal de Apelaciones.[16]

---

[14] AC-2023-0052.
[15] Conocida como la Ley Núm. 38 de 30 de junio de 2017, según enmendada, 3 LPRA § 9601-9713; *SLG Saldaña-Saldaña v. Junta*, 201 DPR 615, 621 (2018).
[16] 3 LPRA § 9671.

La *revisión judicial* tiene como propósito limitar la discreción de las agencias y asegurarse de que estas desempeñen sus funciones conforme a la ley.[17] El criterio rector al momento de pasar juicio sobre una decisión de un foro administrativo es la *razonabilidad* de la actuación de la agencia.[18] Nuestra evaluación de la decisión de una agencia se circunscribe, entonces, a determinar si esta actuó de forma arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción.[19]

Empero, las decisiones de los organismos administrativos especializados gozan de una presunción de legalidad y corrección, por lo que, sus conclusiones e interpretaciones merecen gran consideración y respeto.[20] Por ello, al ejecutar nuestra función revisora, este Tribunal está obligado a considerar la especialización y experiencia de la agencia, distinguiendo entre cuestiones de interpretación estatutaria —sobre las que los tribunales son especialistas— y cuestiones propias de la discreción o pericia administrativa.[21] Ello implica que los dictámenes de los entes administrativos merecen deferencia judicial.[22]

Ahora bien, tal norma no es absoluta. Nuestro más alto foro ha instaurado que no podemos dar deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.[23] Particularmente, concretó las normas básicas sobre el alcance de la *revisión judicial* al expresar:

> [L]os tribunales deben dar deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante

---

[17] *Torres v. Junta Ingenieros*, 161 DPR 696, 707 (2004).
[18] *Otero v. Toyota*, 163 DPR 716 (2005).
[19] *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).
[20] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625- 626 (2016); *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891 (2008).
[21] *OCS v. Point Guard Ins.*, 205 DPR 1005, 1028 (2020).
[22] *DACo v. Toys "R" Us*, 191 DPR 760, 765 (2014).
[23] *Torres Rivera v. Policía de PR, supra.*

destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida.

El alcance de la *revisión judicial* de las determinaciones administrativas se ciñe a determinar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho de la agencia están basadas en *evidencia sustancial* que obra en el expediente administrativo, y (3) si las conclusiones de derecho fueron las correctas.[24]

En cuanto a las determinaciones de hechos, estas serán sostenidas por los tribunales si están respaldadas por *evidencia sustancial* que surja del expediente administrativo considerado en su totalidad. [25] La *evidencia sustancial* es aquella relevante que una mente razonable puede aceptar como adecuada para sostener una conclusión. [26] Debido a la presunción de legalidad y corrección que cobija a las decisiones de las agencias administrativas, quien alegue ausencia de *evidencia sustancial* debe presentar prueba suficiente para derrotar dicha presunción. [27] Para ello "tiene que demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".[28] De modo que no podrá basarse únicamente en simple alegaciones. A esto se le conoce como la norma de la *evidencia sustancial*, con la cual se persigue evitar sustituir el criterio del organismo administrativo en materia especializada por el criterio del tribunal revisor. [29] Aun cuando exista más de una interpretación razonable de los hechos, el tribunal debe dar deferencia a la agencia, y no sustituir su criterio por el de esta.[30]

---

[24] Sección 4.5 de la LPAU, 3 LPRA § 9675; *OEG v. Martínez Giraud*, 210 DPR 79 (2022).
[25] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).
[26] *Otero v. Toyota, supra*, pág. 728.
[27] *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 128 (2019).
[28] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[29] *Pacheco v. Estancias*, 160 DPR 409, 432 (2003).
[30] *Íd.*

Por otro lado, las conclusiones de derecho de la agencia son revisables en todos sus aspectos, sin sujeción a norma o criterio alguno.[31] Así, debemos dar deferencia a las interpretaciones que los organismos administrativos hacen de las leyes y reglamentos que administran. Es por ello que, ante casos dudosos, donde pueda concebirse una interpretación distinta de estas leyes y reglamentos, la determinación de la agencia merece deferencia sustancial.[32]

En resumen, si la decisión recurrida es razonable y se sostiene en la *evidencia sustancial* que obra en el expediente administrativo, procede su confirmación.[33] Por el contrario, los tribunales revisores podemos intervenir con la decisión recurrida cuando no está basada en *evidencia sustancial*, o cuando la actuación es arbitraria, irrazonable o ilegal, o cuando afecta derechos fundamentales.[34] Del mismo modo, el Prof. Echevarría Vargas ha puntualizado que las decisiones de las agencias gubernamentales no deben ser "revocadas o modificadas salvo que conste una actuación arbitraria, ilegal o irrazonable".[35]

## - B – *Ley Núm. 57-2014*

La Ley Núm. 57-2014, *supra*, instituye el procedimiento para objetar una factura de servicio eléctrico por parte de una compañía eléctrica certificada, como lo es la AEE.[36] El Artículo 6.27 de la Ley Núm. 57-2014 dispone que todo cliente queda facultado para objetar o impugnar cualquier cargo, clasificación errónea, cálculo matemático o ajuste de la factura de servicio eléctrico.[37] Como parte de este procedimiento, la compañía eléctrica certificada deberá iniciar una investigación dentro del término de treinta (30)

---

[31] *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).
[32] *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002 (2011).
[33] *García Reyes v. Cruz Auto Corp.*, *supra*, pág. 893.
[34] *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.
[35] Echevarría Vargas, J. A., *Derecho Administrativo Puertorriqueño*, 5ta. ed. Rev., San Juan, Ed. Situm, 2023, pág. 340.
[36] 22 LPRA sec. 10.54z. Conocida como la Ley de Transformación y ALIVIO Energético de Puerto Rico.
[37] *Íd*.

días a partir de que la factura sea depositada en el correo postal o enviada por correo electrónico.[38]

Una vez se haya notificado la objeción, la compañía eléctrica certificada deberá iniciar una investigación o procedimiento adjudicativo dentro del término de treinta (30) días contados a partir de la fecha en la cual se notificó la objeción.[39] Iniciada la investigación dentro del término antes mencionado, la misma deberá ser concluida dentro de los sesenta (60) días a partir de su comienzo.[40] El inciso (3) del Artículo 6.27 apresta:

> [u]na vez notificada la objeción y depositada la cantidad correspondiente, la compañía de energía certificada deberá iniciar la investigación o el proceso adjudicativo que proceda dentro del término de treinta (30) días, contados a partir de la fecha en que el cliente notificó su objeción. **En caso de que la compañía de energía certificada no inicie el proceso dentro del término de treinta (30) días, la objeción será adjudicada a favor del cliente.** La compañía de energía certificada deberá concluir la investigación o proceso administrativo, emitir la correspondiente resolución e informar al cliente el resultado dentro de un término de sesenta (60) días contados a partir de la fecha de comienzo de la investigación o proceso adjudicativo. **Si la compañía de energía certificada no emite la referida resolución o no informa al cliente de la misma dentro del término de sesenta (60) días, la objeción será adjudicada a favor del cliente.** Al notificar el resultado de la investigación, la compañía de servicio eléctrico informará al cliente sobre su derecho a solicitar la reconsideración de dicho resultado y el término dentro del cual deberá solicitar la reconsideración.[41] (Énfasis nuestro).

En la medida que este procedimiento administrativo informal resulte infructuoso para el cliente, éste podrá solicitar una revisión de factura ante el Negociado de Energía de Puerto Rico.[42] El Negociado de Energía de Puerto Rico revisará la decisión final de la compañía de energía certificada sobre la objeción y el resultado de la investigación.[43]

A su vez, el Reglamento Núm. 7982, *supra*, instaura las responsabilidades del cliente por el servicio a su nombre. En lo atinente, la Sección XII, Artículo A del Reglamento concreta específicamente el

---

[38] *Íd.*
[39] *Íd.*
[40] *Íd.*
[41] *Íd.*
[42] *Íd.*
[43] *Íd.*

procedimiento a seguir cuando se trata de un balance pendiente de pago. Este Artículo lee:

> Cada cliente es responsable del pago correspondiente de todo servicio que se suministre a su nombre. Esta responsabilidad permanece en vigor, aun cuando el cliente haya dejado de utilizar el servicio que contrató o haya desocupado, vendido, cedido o traspasado la propiedad a la cual se suministra servicio a su nombre, sin haber formalizado una solicitud de terminación del servicio y éste se utilizó por otra persona, con o sin su consentimiento o conocimiento.
> [...]
> Al cesar el contrato de suministro de energía eléctrica, **cualquier balance dejado de pagar puede transferirse a cualquier otra cuenta que se facture a nombre del mismo cliente** o que éste utilice a nombre de otro y de no objetarse en conformidad con lo dispuesto en la Sección XIII de este Reglamento, ni satisfacerse el pago no más tarde de la fecha de vencimiento que indique la factura donde se refleje el cargo, la Autoridad puede suspender el servicio, según se dispone en la Sección XIV de este Reglamento.
> [...]
> Antes de referirlo, la Autoridad verifica que este balance no fue objetado oportunamente conforme al procedimiento dispuesto en la Sección XIII, o que de haberlo hecho, su corrección se aceptó o se sostuvo durante el proceso.

- III -

En su primer señalamiento de error, la señora Lago Lassise planteó que incidió el Negociado al no declarar ha lugar automáticamente la objeción de la factura presentada el 13 de septiembre de 2018 como dispone el Artículo 6.27 de la Ley Núm. 57-2014. En su segundo señalamiento, apuntó que incurrió al declarar no ha lugar la objeción por la cantidad de $37,775.43 pese a haber transcurrido el plazo jurisdiccional para la investigación.

Por otra parte, entre otras cosas, la AEE puntualizó que independientemente de que se haya desobedecido los términos jurisdiccionales, la deuda objetada de $37,775.43 corresponde a una transferencia de una cuenta comercial para la cual existía un acuerdo sobre plan de pago y se incumplió con el mismo.[44]

Por estar íntimamente relacionados, discutiremos los señalamientos de error en conjunto. En primera instancia, es preciso destacar los hechos

---

[44] El Reglamento Núm. 7982 contempla que, al cesar un contrato de suministro de energía eléctrica, cualquier balance pendiente pueda transferirse a cualquier otra cuenta a nombre del mismo cliente o que utilice a nombre de otro.

pertinentes y medulares de este caso. No hay duda de que, el **13 de septiembre de 2018,** la señora Lago Lassise presentó una *Objeción de Factura* para impugnar el consumo que ascendía a $37,000.00 en su cuenta número 7349042100. El **4 de enero de 2019**, la AEE suscribió comunicación en la cual concluyó que la transferencia era de un balance de $36,821.25 pendiente de otra cuenta: 9614102000. Al no estar de acuerdo, por el incumplimiento del término jurisdiccional, el **11 de abril de 2019**, la señora Lago Lassise presentó una *Querella* ante el Negociado.[45] Ante la solicitud de desestimación presentada por la AEE y la oposición de la señora Lago Lassise, el **14 de julio de 2020**, el Negociado en su *Resolución Interlocutoria* discurrió que, en efecto, la AEE había incumplido con el término para resolver la objeción de la factura. Posteriormente, el **26 de febrero de 2021**, se celebró una audiencia en la cual testificaron las señoras Lago Lassise y Darlene Fuentes Amador.

El **30 de enero de 2023**, el Negociado formuló la *Resolución Final y Orden* impugnada. Mediante esta, expuso que el remedio procurado por la señora Lago Lassise era que no le penalizaran mientras se aclarara el asunto (la objeción). Enfatizó que, en estos casos, les correspondía a los clientes establecer cuál es el remedio solicitado en la objeción para que el Negociado pudiese realizar los ajustes pertinentes, si alguno. La señora Lago Lassise **no** presentó evidencia o prueba testifical sobre su petición. Ante ello, el Negociado reconoció que, de la investigación efectuada por la AEE, se desprendía que la transferencia de $36,821.25 era un balance pendiente en la cuenta número 9614102000, por lo que el remedio fue concedido y declaró no ha lugar la *Querella*. Coincidimos con la determinación del foro administrativo.

En su recurso, la señora Lago Lassise hizo énfasis en que la AEE infringió el término jurisdiccional, por lo que correspondía que se adjudicara

---

[45] Los noventa (90) días para presentar ante el Negociado venció 4 de abril de 2019.

automáticamente la objeción de factura a su favor. No le asiste la razón. En la audiencia pautada para el 26 de febrero de 2021, la oficial examinadora expresó que, aunque se había resuelto que la **AEE** había desobedecido el término jurisdiccional era necesario ver el caso en los méritos. Escuchado los testimonios y evaluada la prueba desfilada, el **Negociado** discernió que el remedio que la señora **Lago Lassise** suplicó era que no se le penalizara hasta que se aclarara la objeción, y así se hizo.

El **Negociado** revisó *de novo* la objeción de factura de la señora **Lago Lassise.** Lo vertido para récord afirmó que la investigación realizada por la **AEE** arrojo que el balance pendiente de los $37,000.00 incluidos en la cuenta residencial de la señora **Lago Lassise** concierne a una cantidad impagada de la cuenta comercial número 9614102000 que estaba a su nombre y se le había otorgado un plan de pago. Ante su falta del pago y por disposición del Reglamento Núm. 7982, *supra,* la **AEE** procedió con la transferencia del balance "a cualquier otra cuenta que se facture a nombre del mismo cliente".

Por lo tanto, no encontramos indicador alguno que refleje que el **Negociado** hubiese actuado de manera arbitraria, ilegal o irrazonable, o si sus acciones constituyen un abuso de discreción. Contrario a ello, denotamos que del expediente emana la existencia de suficientes elementos que nos llevan a concluir que esta decisión administrativa está sustentada y/o avalada por *evidencia sustancial*.

No subsiste razón alguna, de hecho, o de derecho, que nos persuada a intervenir y variar la determinación impugnada. Además, no se desprende de la *Revisión de Decisión Administrativa* alguna otra prueba para rebatir la presunción de corrección que cobija el dictamen administrativo. Cónsono con lo anterior, somos del criterio de que la *Resolución Final y Orden* decretada por el **Negociado** fue una apropiada. Así pues, brindamos la deferencia al organismo administrativo por su *expertise*; y nos abstenemos de intervenir dado que su decisión es una racional.

### - IV -

Por los fundamentos expuestos, ***confirmamos*** la *Resolución Final y Orden* emitida el 30 de enero de 2023 por el **Negociado de Energía de Puerto Rico.**

**Notifíquese inmediatamente.**

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones